OPINION
The following appeal arises from the Columbiana County Court of Common Pleas' decision granting Patrick R. Shaughnessey and Patrick D. Shaughnessey's motion for summary judgment in accordance with Civ.R. 56 (C). For the following reasons, the trial court's decision is affirmed.
 I. FACTS
On July 8, 1995, Cynthia and John Beagle held a graduation party for their son at their home. The Beagles allowed their guests to bring and consume alcoholic beverages. Tary Gilbert ("appellant"), arrived at the Beagle home that evening with beer which had been illegally obtained. While at the Beagle's home, appellant became intoxicated after consuming approximately eight beers within a three to four hour period.
Patrick D. Shaughnessey ("Patrick"), another guest at the Beagle's home, arrived at the party a few hours after appellant. Patrick drove a vehicle to the party which was owned by his father, Patrick R. Shaughnessey. Upon arriving at the Beagle home, Patrick parked his vehicle in a field owned by a neighbor of the Beagles with the front of his vehicle facing away from the residence. The only illumination near Patrick's vehicle was provided by a dimly lit mercury light above a garage in the field.
During the course of the evening, appellant and another guest, Tom Williams, decided to go get pizza. Patrick offered to drive the two boys as he had not consumed any alcohol that evening. The three boys got the pizza without incident. Upon returning to the party, Patrick parked in the same direction in nearly the same site as he was previously parked. Patrick and Tom left the vehicle and returned to the Beagle's home. However, appellant decided to stay in the vehicle because he felt tired and nauseous. Later, appellant exited the vehicle and decided to lay down in the field where the vehicles were parked, directly in front of the right front tire of the vehicle parked by Patrick.
Some time later that evening, Patrick decided to go home. He offered to drive Tom and another guest, Kelly Linger, home. They walked from the Beagle residence through the field to the vehicle, approaching it from the rear. Neither Patrick nor the two passengers inspected the area in front of the vehicle nor saw appellant lying under the vehicle. Patrick started the vehicle and shifted into drive. The right front tire hit something and rolled back. Patrick then gave the vehicle some gas and felt his tire roll over what he thought was a rut or a log. Patrick then parked the vehicle and one of the passengers got out of the vehicle to see what he had rolled over at which time the passenger discovered appellant. Appellant was later successfully removed from under the vehicle.
On January 16, 1997, appellant filed a complaint sounding in negligence against the Beagles and appellees (Patrick D. and Patrick R. Shaughnessey). On April 15, 1998, appellees filed a Motion for Summary Judgment pursuant to Civ.R. 56. Appellees averred that they did not owe appellant a duty of care and thus they could not incur any legal liability for injuries which appellant may have suffered as a result. On May 5, 1998, appellant filed a motion in opposition to the motion for summary judgment. Appellant responded that a genuine issue of material fact existed as to whether a reasonably prudent person would have anticipated that injury was likely to result from Patrick's actions. On May 15, 1998, the trial court granted appellees' motion for summary judgment. The court concluded that appellees did not owe appellant a duty of care and appellees no longer needed to be involved in the cause of action. On June 12, 1998, appellant filed a notice of appeal.
 II. STANDARD OF REVIEW
The Supreme Court of Ohio set forth the standard of review for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293.
In reviewing a summary judgment motion, the appellate court follows the same standard as that employed by the trial court. Civ.R. 56 (C); Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
 III. ASSIGNMENT OF ERROR
Appellant's sole assignment of error on appeal reads:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN THE DEFENDANT-APPELLEE'S FAVOR."
Appellant argues that Patrick had a duty to inspect his surroundings before moving his vehicle. Appellant contends that Patrick owed him both a duty of ordinary care to avoid injury and a special duty of care because Patrick knew that appellant was drunk and Patrick should have foreseen or anticipated that appellant may commit such an act.
 A. LAW
In Jeffers v. Olexo (1989), 43 Ohio St.3d 140, the Supreme Court of Ohio set forth the elements for a cause of action sounding in negligence. The Court pronounced:
 "As to the elements of a cause of action in negligence it can be said that," [i]t is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Di Gildo v. Caponi (1969), 18 Ohio St.2d 125; Feldman v. Howard (1967), 10 Ohio St.2d 189. * * *' Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. See, also, Kauffman v. First-Central Trust Co. (1949), 151 Ohio St. 298, 306.
 Thus, the existence of a duty is fundamental to establishing actionable negligence. "* * * If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence. (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986) 53-54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence. See Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 127.
 Whether a duty exists depends largely on the foreseeability of the injury to one in the plaintiff's position." Id. at 142-143.
In Mussivand v. David (1989), 45 Ohio St.3d 314, the Supreme Court of Ohio stated:
 "The existence of a duty in a negligence action is a question of law for the court to determine. See Railroad Co. v. Harvey (1907), 77 Ohio St. 235, 240. There is no formula for ascertaining whether a duty exists. Duty * * * is the court's expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Prosser, Law of Torts (4th ed. 1971). Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. * * *." Id. at 318 quoting Prosser, Pfalsgraf Revisited (1953), 52 Mich. L. Rev. 1, 15.
The Supreme Court of Ohio further acknowledged:
 "When such a tragedy happens, the first reaction, quite naturally, may be to cast about for fault or some explanation of why the tragedy occurred. * * * However, when the "intervening events are of such kind that no foresight could have been expected to look out for them, the defendant is not to blame for having failed to do so. * * *'" Jeffers, supra at 144-145, citing Elliot v. Nagy
(1986), 22 Ohio St.3d 58, 61.
 B. ANALYSIS
The sole issue presented herein is whether appellees owed a duty of care to appellant. The existence of such a duty is created by a determination of whether appellees could have or should have reasonably foreseen that such an accident would occur. To determine foreseeability, we must first look to the facts.
From our review of the record, it is apparent that at approximately 10:30 p.m., Patrick drove appellant and another passenger to get pizza. (Appellant Depo. at 31). Patrick had elected to drive to get the pizza because he had not been drinking any alcohol and appellant and Tom were visibly inebriated. (Patrick Depo. at 28). They later returned after picking up the pizza. Patrick and the other passenger walked back to the party while appellant stayed behind. (Patrick Depo. at 34). Appellant decided to stay in the vehicle because he was feeling tired and his stomach was upset. (AppellantDepo. at 37). Approximately half of a minute later appellant exited the vehicle and leaned against the front of it. Id. Appellant then fell asleep or passed out underneath the front passenger tire of appellees' vehicle.
Patrick and a friend returned to the vehicle a short time thereafter to make a second "pizza run." (Patrick Depo. at 37). However, the boys noticed a pizza in the back seat and decided to forgo the second trip and eat that pizza instead. Id. Although Patrick knew that the pizza he was about to eat belonged to appellant, he did not think to look for him because he had assumed that he had gone back to the party. Id. at 38.
At approximately 12:00 a.m., Patrick and two others left the party and returned to the vehicle to go home. They approached the vehicle from the rear. No one walked in front of the vehicle before starting the engine. (Patrick Depo. at 49). Patrick did not look for appellant before starting the vehicle nor did he consider that he had not seen him since he had last been in the vehicle. (Patrick Depo. at 48). Patrick started the vehicle and began to drive forward. Upon driving forward, he hit something, which Patrick assumed was a rut or a log, that caused the vehicle to roll back. Patrick proceeded to give the vehicle more gas and drove over the object. After driving over the object, Patrick parked the vehicle. (Patrick Depo. at 51). One of the passengers opened the passenger door at which time Patrick heard appellant screaming to get the vehicle off of him. Id. at 52.
Patrick did not have a duty to secure appellant's whereabouts before proceeding to start his vehicle. The mere fact that appellant had been in the vehicle at some point in the evening does not create an obligation to determine where appellant had gone. It is not reasonably foreseeable that appellant would have fallen asleep under or even near appellees' vehicle. Nor is it reasonable to impose a duty upon Patrick to check under the vehicle when he nudged appellant the first time. The vehicle was parked in a field where it is entirely reasonable that he would run into a rut or a tree stump while trying to pull away. Patrick immediately parked his vehicle upon noticing that his right front tire had raised up to further investigate. Prior to that time, Patrick had no reason to suspect that appellant was the object he had run over. Therefore, appellant's assignment of error is without merit.
For the foregoing reasons, the decision of the trial court is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE